Case No. 13-5269, Prison Legal News Appellant v. Charles E. Samuels, Jr., Director, Federal Bureau of Prisons. Mr. London for the appellant, Ms. Johnson for the appellate. Mr. London, good morning. Good morning, Your Honors. May it please the Court, I am Ronald London on behalf of the appellant, Prison Legal News. With me at council table is my colleague, Lisa Zycherman, and Lance Weber of Prison Legal News. I'm going to endeavor to reserve three minutes for rebuttal. The district court erred on both sides of the balance required by Exemption 6 to the Freedom of Information Act in this case by allowing the Bureau of Prisons to withhold the personal information that remains in dispute in this case. Specifically, on the public interest side, the district court seriously undervalued the role that the press and public interest groups play in derivatively using information obtained through the Freedom of Information Act along with other public records and materials. Are you making that claim with respect to, as I think your brief says, dings? With respect to? Dings. Settlements arising out of dings. I thought that was the term from your opening brief in terms of objecting to the failure of the Vaughn Index to distinguish between dings and more serious. OK, I'm sorry. Yeah, so the difference between a car being dinged versus someone being, say, sexually assaulted. Right. I mean, well, the argument I'm making is that the district court said that the only public interest here was the ability to match certain documents with other documents because prison legal news had shown no well-publicized scandal, and that that matching of documents with other documents was not a public interest that could justify disclosure. Now, putting aside that rather ungenerous characterization of prison legal news as showing, I want to focus on a case that was decided after the district court's decision by this court that specifically speaks to that point. In the Jurowitz case, this court specifically recognized that being able to take documents acquired through the Freedom of Information Act, if they are unredacted and are fully usable as a result, and using them alongside other public records or conceivably sources gathered elsewhere, to shed light on government operations could satisfy the public interest showing under Exemption 6. That's exactly what the record here reflects prison legal news put forward as a public interest here. Prison legal news explained that without the personally identifiable information that's been withheld in these documents, there is no way to properly analyze the thrust of the documents and what they say about government operations. When you say these documents, are you referring to not a single page, but a collection of 102? Is it 102? Well, it's 102 as described in the district court's decision. The 102 documents come from what was attached to prison legal news's declaration, which was taken directly off the CD-ROMs that they were provided by the government, arranged in the order of those files appearing on the CD-ROMs as exhibits. Now, if you look within those 102 documents... I have looked at them, and I frankly don't understand your legal position in looking at them. For example, one of them is the Salmonella, which is referred to, and that's exhibit number 95. If you look at exhibit number 95, there's one redaction on the claim, and it's the name of the claimant. But then all the other documents have the individual. I've forgotten her name. A lawsuit, a complaint is filed, a stipulated... So what's the problem that you have with that? You know the name of the claimant. It's in the document. And in 93, for example, there's no redaction at all in exhibit 93. That's right. And where I was going a moment ago on trying to enumerate the number of documents at issue... And then in every other one that I looked at just about, there are settlement agreements. And the settlement agreement says that we neither party admits, we neither admit nor deny. It's the usual boilerplate language in the settlement agreement. And yet you're saying that the names of the individuals who supposedly perpetrated the wrongdoing don't have to be disclosed because they're wrongdoers. But these documents indicate that there's been no agreement and no finding that they were doing anything wrong. Okay. Let me try and answer those in series. First, where I was going on trying to enumerate the documents, yes, within the documents that were provided, there were some where the claimant was disclosed. There were some where there were repetitions. The same document appeared in different exhibits. There were others where the government ultimately, through the course of summary judgment, unredacted some of the information. At the end of the day, there's probably somewhere in the area of 75 or 80 distinct cases where either claimants and or Bureau of Prison alleged wrongdoers are accused and redacted. As to the question of the boilerplate recitation that neither side... Pause you there, if I may. Is it your position that the district court had the duty to go through these 75 documents, maybe 750 pages, I don't know, and some of them are... It's about 900 altogether. 900 pages? Mm-hmm. That the district court had to go through page by page by page and do the balancing for each page? Oh, no. My position is the Bureau of Prisons had the duty to do that, and they failed to do that. What they left the district court with was a Vaughn Index that went, sure enough, document by document, but there was no explanation of any kind of context of what the privacy interest being asserted was. They repeatedly said over and over again that the privacy interest was simply that the individual who filed a claim suffered injury, loss, death, or some form of discrimination. For the Federal Tort Claims Act cases, which is the minority, they threw in that. The very filing of the claim revealed that the claimant filed a claim and received some money from the government. And as to the BOP officials, the alleged wrongdoers, all they said over and over again was associating them with a case where there may have been a proof of liability would interfere with their privacy rights. And in every single case in both of those categories, they simply concluded that there was... I'm glad you used the modifier alleged wrongdoers because I don't recall seeing that in your brief. We switched back and forth. It is alleged wrongdoers. How many of the 75 documents, cases, were settlements? Oh, they're all settlements because if they went to adjudication, those documents are public. The documents are public. That's right. So they're all settlements, and they're all settlements in which the government, the Bureau of Prisons, does not admit liability. Yes. Or wrongdoing. Well, that's not entirely true. There are a couple of documents, in fact, where, for example, Exhibit No. 3, to the right declaration, there's an actual memo that says to the alleged wrongdoer, you have been found to have committed sexual harassment. You may not work with this claimant anymore. There are a couple of cases. But you're right. They are alleged wrongdoers. But I think you're kind of hitting the nail on the head here, and that is without getting the identities of those individuals, there's no way to make any assessment as to whether the... As I understand it, your claim is at its strongest with respect to repeat offenders, in quotes, because we don't know if they're offended, or repeat complainants, which doesn't need to be in quotes. And at least so far as we're looking at that within Bureau of Prisons activities, your interest... Well, let me say for myself, not for any of my colleagues, I accept the proposition that the public interest in knowing what's going on at least increases where you have repeat players on either side. But wouldn't your interest in that be fully satisfied by coding from the BOP, just using a bunch of letters for everybody, so that you could see repeats? I mean, it does seem to me that someone who, eight times, does something, rather, that causes the government to have to make a settlement for sexual harassment is a problem, and maybe that does show that the government is up to something silly when it just keeps paying off the complainants, and apparently does nothing about the alleged perpetrator. But you haven't explicitly asked for that, have you? Well, two questions here. Would it satisfy our need, and have we asked for it? The question, would it satisfy our needs? Not entirely. It would certainly help within this subset of documents to see if there are repeat offenders, repeat alleged offenders, frequent flyers, whatever you want to call them. But don't forget, we also have 10,000 pages of other documents that are the same kinds of settlements that just happen to not be settled at the agency level. So in order to see if those individuals are represented... I'm sorry, were not settled at the other agency's level? They were settled at the agency level, so they generated public records, and therefore they were released unredacted. So we've got 10,000 pages of unredacted material, about 900 pages of redacted material. Even if they coded for those 900 pages so they could maintain anonymity, you would still have no ability to match across those documents. Second of all, that kind of coding is not in the records. The agency has no obligation to create records for purposes of responding to FOIA, and as this Court said in ACLU v. DOJ, which has been up here a couple times in the last several years, that kind of offer by the government, if it was ever forthcoming, which it hasn't been, might be a grounds for settlement. But it's not a grounds for satisfying a FOIA burden that the government has. I see that I'm out of time. If there are any other questions, I will come back on rebuttal. Thank you, Your Honor. Ms. Johnson? Good morning. May it please the Court? From the governor's perspective, we believe that there are two issues before the Court. The first one is whether the VOP should have provided subcategories or divided the documents into further smaller groups. We believe that such delineation was not required here. And the second, the theory of derivative use that's been proposed by the appellant. As the Court is aware, the VOP, we believe, and the district court, properly engaged in the balancing approach that is required by Exemption 6. It is our view that the release or disclosure of names and any other personal identifying information tips the balance for the public interest. When you look at the documents, as Judge Randolph referred to, for example, their settlement agreements, and the settlement agreements contain all the other information required. For example, if there was a complaint of discrimination filed, and there's a settlement agreement, the settlement agreement says that the parties have agreed to the following documents, but the complaint of discrimination sets forth any allegations. So we believe that any information that the appellant would need in terms of looking at a settlement agreement has already been disclosed. And so when you look at the Moore Fourth Declaration and you look at the Strobel Bond Declaration, you see that there is a substantial amount of information that has been disclosed by the government here. Is it your understanding, I probably should have asked Mr. London, and I will when it gets up again, but does their argument include the redaction of claimant's names, or are they just complaining about the redaction of the alleged wrongdoer's names? Or is it both? Well, Your Honor, if I may direct the courts to the FOIA request here. The FOIA request says claimant slash litigant. In the FOIA request. Is it in the joint appendix? The original FOIA request, Your Honor? Yes. It's in several places. I was just referring to the one that's in the brief for the appellee. But if you look at the... No, I just wanted to take a look at it. Oh, the original FOIA request, Your Honor? I believe it's located in the more declaration at the joint appendix JA-60. 60? JA-60. And what the... The FOIA request is for all documents showing all money paid. If you look at the FOIA request here, this is a request regarding how the V.O.P. spends money. And the V.O.P., in all the release that you have in front of the documents, whether you consider them 98 documents or one or two, we have not failed to... We have not redacted any financial information that has been paid out or monies paid out about V.O.P. Yeah, but I take it the request is based on an interest in what the payments show about the policy of V.O.P. with respect to various kinds of complaints. And at least so far as we're talking about repeat players, that information is not available, as I understand it. Well, what is available, Your Honor, is the monetary amounts of that. Yeah, but that doesn't answer the problem of how many times you pay out for alleged perpetrator A. Well, Your Honor, when you look at the interest here as to how many times perpetrator A was provided funds, there is a... Funds are provided to victims. I'm sorry. Victims A through Z. I misspoke, Your Honor. When you look at the amount of money that are provided to the plaintiffs... Right. ...you will see that there were no redactions of the amount of money paid... I understand, but the aggregative effect is concealed, right? Unless I'm completely missing something here. I'm sorry, Your Honor. The inferences from aggregation of settlements for perpetrator A are lost, or put more cautiously, are not provided. Well, Your Honor, what we would submit is that for each of the documents that's listed here, we have provided all of the information that would be financial information, the facts underlined in the claims, and any other matters regarding litigation or settlement of that issue here, except the names and the other identifying information. And it does not, the release of the names, does not tip the balance here for the public interest. As the district court... The plaintiff's argument basically is that, at least as I understand it, and I may be understating the full scope of their claim, but they appear to be claiming that repeat players represent a special problem and that the public interest increases with respect to them and that private interest either doesn't rise or doesn't rise at the same degree, right? And I don't see any answer by the government to that. Well, our response, Your Honor, is that's just speculation on their part. How is it speculation? Well, when the search is not challenged here, and what the court found across the country, the various documents in terms of the 98 are from numerous districts here, numerous separate federal facilities. Yeah. And there is no basis, we believe, for the plaintiff, I'm sorry, for the appellant here, to suggest that they were just repaying sons of money in cases where there are repeat cases. There's the case that, for example, if there's a tort fees allegedly, that person's, if there's an FTCA claim, that person's name was not redacted if it led to the disclosure of public documents. And any argument regarding allegedly repeat offenders is just simply speculation on their part. Moreover, Your Honor, with each of the- I'm not sure what you mean by speculation. One thing you could mean is there's no reason whatsoever to think that there are repeat offenders. But I don't see how you could say that, or at least tell me what the basis for such a statement is. Well, Your Honor, I don't think that they have identified those. How could they have identified them? Well, what I mean is that when you look at the information regarding each of the exhibits that are set forth, either the 98 or 100, every single exhibit lists the claim, any amount of money that was paid, and any other information. And you can't just ignore the Salomon Agreement in which the parties- Any practice in the material that was delivered for BOP to say, well, we had to pay an extra amount because the prospect of defending this guy was pretty dim, or something like that, which would suggest, or prospect of defending this guy was pretty dim because of his multiple prior accusations. I mean, is there some practice of including information like that? Well, Your Honor, even if- I mean, if there were such practice, then its omission might be telling. Well, Your Honor, we would suggest that any time that a case is settled, in response specifically to your question, even whether the parties agree that there is a possible chance that there would be problems with further litigation in the case, the Salomon Agreement by both parties says that there's no omission of liability. And that is the agreement reached by both. Not only does that say that's the end of the litigation, but it also says that any other matters relating to this have been disclosed. And here, the appellee disclosed every single thing about the case, other than the particular name of either the plaintiff, if there was an alleged tort fee. So, for example, an FTCA claim, that person's name was not omitted. For example, there was a prison guard, and there was an FTCA claim. That prison guard's name is on the FTCA claim, the standard form 50. That case also went to the district court. So, in those kinds of cases where you have, that you're talking about an alleged tort fees, the identity of that person is disclosed. I noticed that on Exhibit 3, counsel referred me to the claimant's name is redacted, but the perpetrator, the alleged perpetrator, Eddie Smith. Eddie Smith, the guard. The guard. Yes. His name is disclosed. Yes, his name is disclosed in the claim, and his name is also disclosed in that exhibit, Your Honor, in the documents that were filed in the district court. Right. But the claimant apparently sued under just her initials, because the district court complaint, the complaint she filed was just like VFN, and the actual name was not disclosed in the court file. It was not, and in that complaint, the court said that in Exhibit 3, that the initials VDM was used because the plaintiff did not want to disclose her identity. That, I believe, is in the reading in the text of the complaint. And it was a sexual assault. It was, by a prison guard. I believe it was Lexington, Kentucky. Can I ask you to clarify something? At some point in the JA, you say that BOP employee names were redacted if they were not acting in an official capacity. What do you mean by official capacity? You're not talking about policymakers versus them. No. Right. What are you talking about? Well, Your Honor, for example, there is a correctional guard if engaged in some conduct, or there may have been the head of a cafeteria or something. We would not disclose the name of anyone who was conducting policy. Then who is acting in an official capacity? Well, we would think that, for example, if there is a specific incident involving a high-level official, that person would be disclosed. Could you pursue that? Are you saying that the disclosures of names that you made include all names of alleged, I use the word perpetrators vaguely, broadly, above a certain rank were disclosed? Now, what I'm saying, Your Honor, there are three groups of claims here. There's FDCA claims, there's EEOC claims, and there's MSPB claims. What's the third? The Mayor's System Protection Board. Yeah. And what was disclosed here was the names of what was redacted was the names and personal identifying information of people who were not acting in an official capacity. That is, is that what you're asking me? Your answer to me was I took it to be Bivens. In other words, if it's a policymaker like the warden, you give that name. If it's a prison guard, Joe Smith, you don't give that name. Well, Your Honor, I think that when we say here – I don't know what you mean other than that with official capacity. That's what I was taking from what you answered, Judge Henderson. Well, I think our response, Your Honor, would be that when we did the bond index for both, we said in there that we redacted only the names of employees who were not acting in an official capacity. And that is – Are you invoking that statute under which suits against an individual get transformed into suits against the government, I've forgotten the name of the statute, on the basis of an assertion by the Attorney General that it was within the – that the defendant was operating suit – I forget the terms. Your Honor, we don't – it is our view that there were, as far as we're aware, that there were no claims here with regard to any allegations that were redacted because of any Bivens claims. The only claims here involved EELC claims, FDCA claims, and the Mayor's Citizens Protection Act. Your Honor, I find in looking through these documents, and I haven't gone through even any more than 10 percent of them, I just don't find there a rhyme or reason that in some of them – and I was just looking now – the claimant on the first page of the document, the claimant's name is redacted, and then on subsequent pages the claimant's name is not redacted. And in some of them I find that a prison official, a guard, whatever, his name is redacted on some of the documents and others not redacted. What is – what's the rationale that's going on here? Well, Your Honor, it was our intent that the name would be not redacted if it led to litigation where there would be a public disclosure of the name. For example, in the one that we talked about earlier, the name is – remains of the person who committed the act because later on there was further litigation in the district court. Yeah, but there's a claim form that gets filed in Federal Tort Claims Act cases? Yes. There's a claim form. And that's – I take it is not a public document. It is the claim that's filed, the standard form 50, and it's where the claimant sets forth the allegations. And what we did in those claims, Your Honor, is only to redact a name, not the underlying allegations that the person is setting forth. I'm just looking at one here. I don't know what exhibit this is, but it's the Federal Correction Institute, et cetera, et cetera, in Phoenix. And the claim form is – there's Angela Elder, Box A, Cottage 2, Federal Prison Camp. It's on page JA-348. And if I go to others, which I've done, and I find the claim form, if you go to JA-374, the claimant's name is redacted. It's not redacted. Like I said, I mean, it just seems totally inconsistent. Well, Your Honor, I would respond that it was the intention that, unless it was just overlooked, where if the person's name remained on the particular form, it was simply because it would be released later. Because what? Because it would be released later in a public document. For example, if the claim led to further litigation, the name would not be redacted. That's not true of exhibit 95. The claim there, as I recall, the claimant's name is redacted, and then the public documents, the complaint is filed in the district court, the claimant's name is not redacted. That's the sound analogy. Right. There's several of – well, there's another one involving injury because of food. I think, Your Honor, the – I believe in plaintiff's exhibit number 95, the complaint that was filed in the district court, it says here in West Virginia, that there were no redactions there. Right. But take a look at the claim form, which I think is – I don't have them from the – which is the first document there. And what we know is Janet Wilson, but if you go to JA-1239, which is the form for, I think it's a tort claim act, her name is redacted on that, and then not redacted on the other documents. Your Honor, I don't know the answer to that, other than the intent was that if the name was in – proceeded to further litigation in the public domain, we would not have redacted the name. Thank you. Does Mr. London have any time? All right. Why don't you take a couple minutes? Can you start by telling us how you interpret the redaction of names that – of BOP employees who were not acting in an official capacity? I wish I had – I have no earthly idea what the relevance of that is in this case. That's a concept out of qualified immunity, Bivens. I mean, whether someone's – Well, let me ask you this to make it more concrete. Looking at the documents, have they named the warden but not the prison guard? Have they named the – And that's why I have no earthly idea, because when you look at the documents, there are cases where they have withheld the name, for example, of a warden, of a warden who engaged in some kind of discrimination or retaliation. That can only be acting in their – let's stay away from the word official, but in their work capacity at a minimum, and I consider that official capacity. I don't understand the relevance of that distinction at all. Almost all of these BOP alleged wrongdoers are doing wrong in the course of their employment. I don't understand how you can say, oh, we've disclosed everyone who's acting in their official capacity. In fact, I don't even know how you can have a discrimination claim against someone who's not acting in their official capacity, because that's the whole basis, is that you're treating a subordinate unfairly or doing something wrong to them because you have that power over them by being their superior. It's as much of a mystery to me as it is to you. Well, I was trying to think perhaps if an inmate is taken to a private hospital and the hospital does something, but even then – I'm not aware of any record among these that are in dispute where the wrongdoer was a private individual. A couple other points on subcategories. This Court was very clear as recently as a year ago in Citizens Responsibility and Ethics in Washington that a categorical approach is only appropriate when, and I'm going to quote, only when the range of circumstances included in the category characteristically support an inference and the statutory requirements for exemption are satisfied. What that basically means is that the agency has to supply some convincing reason why no matter what the context, a privacy interest trumps the public interest. The only way for that to be true in this case is if there is no public interest whatsoever, and I spent a fair bit of time explaining earlier that there is. Otherwise, you've got a category here – Yeah, but can we pursue that? You tell me that although it's a basis of – a potential basis of settlement between the government and a requester for the government to create a coded system answers the question of repeat players, but it's not something the Court can impose. And if that's the case, then as I understand it, the choice is between – choice requires the Court to weigh whether the privacy interests of all the people involved outweigh the public interest, including the public interest in catching some unknown number of repeat players and therefore some potential for seeing that the government is behaving stupidly or corruptly in making these settlements. Is that correct? Two points on that, if I may, even though I'm out of time here. First of all, the coding idea really doesn't entirely solve the problem, because as I mentioned – It doesn't cover the outside, right? I get that. And not only that, it doesn't allow us to conduct the journalistic endeavor of follow-up, because if you don't know who to ask, you can't do follow-up and shed additional light on government behavior. But putting that aside, in terms of whether you do the balancing in the aggregate, everybody's privacy interests versus the public interest, that's not the way it works. This Court has said that the privacy interests can be affected by myriad considerations, including whether the individual is a government employee or not, because government employees have a somewhat reduced expectation of privacy. You also have to look at the rank of the government employee, and you have to look at the nature of the conduct that's relevant to that government employee. You can't do that on an en masse basis with a group that includes government employee alleged tort feasors, government employee complainants, inmate complainants, third-party witnesses. Those privacy interests are going to be very different. And, in some ways, the public interest is going to be different. You've got to conduct that balancing in a way that fairly assigns the right weight to the privacy interest of the individual and the public interest in disclosure. Now, I'm not saying – You mentioned Exhibit 3 in the last time. Just so I understand, the only thing that's redacted, I looked at it, is the name of the woman, I guess it was, who claimed that she had been sexually assaulted by Eddie Smith, the guard. The guard's name is there, the warden's name is there, the allegation. The only thing that's missing is the name. And what's your argument about that it was errant to redact the individual's name? My argument is not that on that particular record it was errant to redact that particular claimant's name. My argument is that you can't treat every single other document that's in dispute here the same as that document. That document seems to be – and I can't guess because there's no explanation in the Vaughn Index or in the declarations – but it seems to be we're assuming a privacy interest on behalf of the sexual assault victim. And I think we can all agree that those kinds of victims are left out of court records. Journalists don't publish rape victims' names. There's a privacy interest. But the case law is clear that you cannot use supposedly self-evident privacy interests to meet your burden as the government. And then in all the other documents – But what is the government supposed to do? What do you suggest? That they disclose their name? No, not at all. What I'm suggesting the government needs to do here at a minimum for starters, which hasn't happened in the 10 years this case has been litigated, is at minimum provide an explanation of why the privacy interest is what it is and what its weight is. Now here, this is an extreme outlier case, and we might be able to surmise that even though the case law doesn't allow us to. But the other documents here are rife with claimants and VOP officials whose information is withheld. There's no explanation, for example, of why a torn bicep on a basketball court has a privacy interest sufficient to overcome the public interest. What's the public interest? The public interest is the reason that that gentleman walked around with a sling for seven weeks is because he didn't get adequate medical care. There are multiple documents here where they've withheld the name of the claimant and the staff responsible when there was not adequate medical care. We have a case where someone had a hernia and they weren't treated for so long that they lost a body part. Did you file in the district court any pleading memorandum going through the 900 pages that we have before us in this appeal, giving the argument with respect to each one of the redactions? We couldn't even get that far because the Bureau's categorical approach didn't allow us for that kind of rebuttal. It's their burden to show the privacy interest, and they didn't do it for 99% of these individuals whose information they redacted. There are documents in here that there's no redaction. Right, and those documents are no longer in dispute. Are you referring to the footnote in the district judge's opinion? Yeah, I mean, the district judge identifies some of the documents. That takes a handful of documents off the table. It's just a handful. That's right. He doesn't mention, for example, I mentioned to you Exhibit 93. There are no redactions in there, and yet that's one of the documents that you're complaining about. I don't get it. No, and let's be clear. We're not complaining about any documents that don't have any redactions in them, okay? And we're also not complaining about any documents where, for example, as you noted, the individual's name is not redacted on one document in the record, but several other documents in the record. They're identified. Those individuals have been identified, although I will note in some of the exhibits you're looking at, for whatever reason, the government has grouped multiple claims by multiple claimants into one exhibit. So when you're looking across them and you see in the first document the claimant's name is unredacted, and in the next document the claimant is redacted, those aren't necessarily the same claim. They're not necessarily the same person. What we're saying is, in the first instance, as a first cut, the government has the burden to explain what the privacy interest and some way for the court to assign it a weight. And if you want to use a categorical approach, that's fine. You don't have to go individual by individual necessarily, although I will note we're down to about 73 claims at this point. But if you're going to use a categorical approach, those categories have to make some rational sense. They have to group together homogenous individuals or homogenous incidences and explain why they're similar and what the privacy interest is, and you've got to take into consideration. Is there an argument, as I understand it now, I don't know why I always confuse people, that includes it's not just the alleged wrongdoers, the redaction of their name, but it's also the claimants? Yes, and I think you're hitting the nail on the head. And that is the privacy interest of claimants and the privacy interest of wrongdoers is different. You can't put them in the same category for weighting purposes. All right, thank you.
judges: Henderson, Williams, Randolph